## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

|  |  |  |
|---|---|---|
| Nyuma Johnson | * | |
| 8160 Aspenwood Way | | |
| Jessup, Maryland 20794, | * | |
| | * | |
| *Plaintiff*, | * | |
| | * | |
| v. | * | |
| | * | |
| 2U, Inc. | * | |
| 7900 Harkins Road | | CIVIL ACTION NO. 8:19-cv-1637 |
| Lanham, Maryland 20706 | * | |
| | * | |
| <u>*Serve on Registered Agent*</u>: | * | |
| Chip Paucek | | |
| 7900 Harkins Road | * | |
| Lanham, Maryland 20706 | | |
| *Defendant* | * | |
| | * | JURY TRIAL DEMANDED |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |

*     *     *     *     *     *     *     *     *     *     *     *     *

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Nyuma Johnson, Plaintiff (hereinafter "Plaintiff"), and files this Original Complaint, against 2U, Inc. (hereinafter "Defendant" or "2U"), and in support thereof states as follows:

## INTRODUCTION

1.      This action seeks back pay, compensatory and punitive damages, attorneys' fees, costs, and pre-judgment and post-judgment interest for race, sex, national origin discrimination and retaliation suffered by Plaintiff in the course of his employment with Defendant.

2.      Plaintiff demands a jury on all issues triable to a jury.

## PARTIES

3.      Plaintiff Nyuma Johnson is an African American male who is a resident of Jessup, Howard County, Maryland.

4.      Defendant 2U, Inc. is a Delaware corporation, duly authorized to conduct business in the State of Maryland, and its headquarters are in the State of Maryland and may be served with process through its registered agent: **Chip Paucek, 7900 Harkins Road, Lanham, Maryland 20706**, or wherever an authorized agent may be found.

5.      Whenever in this Complaint it is alleged that the Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant's or was done in the routine and normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants or employees.

**JURISDICTION & VENUE**

6.      This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (the "Title VII").

7.      This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331 (federal question) since Plaintiff is bringing these claims pursuant to Title VII.

8.      The Court has personal jurisdiction over Defendant since Defendant maintains a headquarters office in Maryland, staff employees in Maryland, and regularly conducts business in Maryland.

9.      Moreover, the acts about which Plaintiff complains occurred within the State of Maryland.

10.     Venue is proper in this Court because Defendants regularly conduct business in Prince George's County, Defendants maintain offices in Prince George's County and the acts and conduct charged herein occurred in Prince George's County.

11.     This Court has jurisdiction over all claims in this action.

12.     All conditions precedent to filing this cause of action have been met.

**PROCEDURAL PREREQUISITES**

13.     On June 28, 2016, Plaintiff filed a charge of employment discrimination with the Maryland Commission on Civil Rights ("MCCR") on the basis of race, national origin and sex discrimination and alleging retaliation against Defendant.  MCCR sent the charge to the Equal Employment Opportunity Commission ("EEOC") for dual filing purposes, and on June 30, 2016, EEOC issued Charge Number 12F-2016-00573.

14.     On March 6, 2019, EEOC mailed to Plaintiff a Notice of Right to Sue letter authorizing Plaintiff to file suit in this Court.

15.     This Complaint is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue letter.

## FACTS

16.     Plaintiff is an African American male.

17.     Plaintiff's employment with 2U began on or about May 18, 2011.  During his employment with 2U, Plaintiff worked at 2U's facilities.

18.     2U is in the business of creating online degree programs for universities.  The online degree programs are identified by acronyms like "MPH@GW," which refers to the Master of Public Health at George Washington University.

19.     Plaintiff initially was hired by 2U as an employee in the capacity of an admissions counselor in the Nursing@Georgetown program to recruit prospective students for the online nursing program at Georgetown University.  Plaintiff was one of the pioneers of that new program.

20.     Plaintiff supervisor in the Nursing@Georgetown program was Jacques Rojahn, who is a white male and whose national origin is not Liberian.

21.      Plaintiff worked for approximately 2 years in the Nursing@Georgetown Program, successfully performing his duties as an Admissions Counselor and taking on additional responsibilities because Plaintiff was seeking advancement in the company.

22.     Plaintiff's supervisor, Mr. Rojahn, knew of Plaintiff's desire to advance.  In 2013, Mr. Rojahn persuaded Plaintiff to transfer to a new department, MPH@GW, by advising Plaintiff that there were no opportunities for advancement in his current department, and that Plaintiff would have opportunities for advancement in the new department.

23.     Relying on Mr. Rojahn's representations, Plaintiff agreed to transfer to a new department, MPH@GW.

24.     Plaintiff later came to realize that Mr. Rojahn's representations were false. Following Plaintiff's transfer, Mr. Rojahn promoted several Admissions Counselors who had been hired after Plaintiff to higher and more advanced positions.  All these promotions were given to employees who were white Americans, many of whom were female.

25.     For example, after Plaintiff transferred from that department, Mr. Rojahn promoted Ms.  Feather Jade Smith-delaMeta, who joined the Nursing@Georgetown department after Plaintiff, to become the Director of a new program, Nursing@Simmons.  Ms.  Jade Smith delaMeta is a white, American female. Additionally, 2U's HR department promoted Ms. Brittany Odoms, who joined the Nursing@Georgetown department after Plaintiff, to become the new director of Nursing@Georgetown program. Ms. Odoms is a white American female.

26.     Plaintiff was the first Admissions Counselor in the MPH@GW program.  His supervisor was Director Monica Sella. Monica Sella reported to Mrs. Heather Dexter who was the General Manager of the MPH@GW program.

27.     Plaintiff performed his duties as Admissions Counselor well and assumed additional duties to realize his hope of advancement, as promised by Mr. Rojahn.

28.     Nevertheless, when the opportunity for an Admission's Manager position opened, the director hired Mr. Brad Kirk, a Caucasian, who was trained by Plaintiff when he started working in the department.

29.     There was no advertisement or announcement for the position, and Mr. Kirk was hired without any formal interview.  Plaintiff was not given an opportunity to apply for the position.

30.     Plaintiff was treated less favorably than Mr. Kirk because of Plaintiff's race and/or national origin.

31.     Mr. Jacques Rojhan later became the Vice President over Plaintiff's MPH@GW department, with Ms. Monica Sella continuing to serve as Director and Mrs. Heather Dexter as General Manager.

32.     Mr. Rojahn, Ms. Sella, and Mrs. Dexter continued to discriminate against Plaintiff on the basis of his race, sex, and/or national origin.

33.     For example, when an opportunity for promotion to an Admissions Manager positions arose, Plaintiff applied for the position, together with Ms. Lacey French and Mrs. Allison Norgaard, who were less experienced Admissions Counselors whom Plaintiff had trained,  Both are Caucasian American females.  2U promoted Ms. French.

34.     Subsequently, another opportunity for promotion to an Admissions Manager arose.  However, this opportunity was not advertised or announced, and formal interviews were not held.  Plaintiff was not given the opportunity to apply for this promotion.  Instead, Ms. Sella and Mrs. Dexter promoted Mrs. Allison Norgaard to the position of Admissions Manager.  Moreover, Mrs. Norgaard became Plaintiff's direct supervisor.

35.     Several months prior, a Post Enrollment Services Manager position opened which was given without any interview to Mr. Brian Martinowich, a Caucasian American who the Plaintiff helped train.

36.     Plaintiff regularly received much positive feedback from prospective students by email for his smooth administering of the admission process.  Nevertheless, in January 2015, Plaintiff's manager, Mrs. Allison Norgaard started helping, mentoring and befriending a newer

Admission Counselor, Ms. Melissa Jester, who was a female Caucasian. Ms. Jester was promoted to an Admissions Manager position.

37.     Another newer Admissions Counselor, Vivienne Chao, a female Asian American was promoted to an Admissions Manager position.

38.     On February 13, 2015, Plaintiff complained to Mr. Brian Duncan, in Defendant's HR Department, Mr. Duncan contacted Plaintiff's Director, Monica Sella, and Plaintiff's Manager, Allison Norgaad regarding Plaintiff's complaint.

39.     On May 8, 2015, Mrs. Norgaad retaliated against Plaintiff by issuing him a final warning and putting him on probation.  Placing Plaintiff on probation resulted in prohibiting Plaintiff from being eligible to transfer to another department within the company or be permitted to apply for any open positions within the company.  Plaintiff was the only Admissions Counselor who was given a final written warning in his department.

40.     Following this retaliatory response, on or about May 13, 2015, Plaintiff again contacted the HR Department, communicating with Ms. Andi Merson to complain about the final written warning he had received.  Plaintiff did not receive a response.

41.     On or about October 31, 2015, Admissions Manager Melissa Jester shouted in an angry tone at Plaintiff for not wearing a black shirt to the office Halloween costume contest and requested he leave the office to purchase such a shirt.  This incident was a further example of Plaintiff being singled out and harassed.

42.     Plaintiff again complained to HR.  A meeting was held, but the matter was not resolved.

43.     Defendant promoted Ms. Monica Sella from Director to Vice President of Admissions in May 2015.

44.     Defendant promoted Ms. Lacey French from Admissions Manager to replace Ms. Sella as Director of Plaintiff's department in May 2015.

45.     On January 6, 2016, Plaintiff's Director Lacey French, met with Plaintiff.  She informed Plaintiff that she would be holding him to a certain measurable performance standard. This performance standard was higher than the performance standard that she was applying to the other seven (7) Admissions Counselors in the Department, all of whom were Caucasian.

46.     On or about February 3, 2016, Ms. French again met with Plaintiff.  Following this meeting, Ms. French assisted Ms. Caitlin Larrimore, a Caucasian female with a lower performance history and less seniority than Plaintiff, to transfer to a new position without advertising or announcing the position.  Plaintiff was not given the opportunity to apply for this position.

47.     On or about February 15, 2016 Plaintiff applied to transfer from his department by applying for a Placement Specialist position.  Plaintiff interviewed for the position, but he was denied without a specific explanation.  Plaintiff simply was told by HR Recruiter Evan Petro that he was not a "good fit" for the position. On the contrary, prior Admissions Counselors, Ms. Allison Hayden, Ms. Cynthia Hearn and many other Admissions Counselors who were hired after or before the Plaintiff were allowed by the Defendant to transfer and assume the Placement Specialist position.

48.     Plaintiff asked Mr. Petro to identify other positions for which Plaintiff would be a "good fit."  Mr. Petro refused to do so.

49.     Plaintiff was aware of several open positions at 2U for which Plaintiff was qualified.  However, Mr. Petro refused to identify them for Plaintiff.   Defendant ended up

selecting Caucasians to fill those positions.  For example, three (3) Caucasians were offered Placement Specialist positions.

50.     On March 3, 2016, Vice President of Admissions Monica Sella met with Plaintiff. After the meeting, Ms. Sella threatened to terminate Plaintiff's employment and identified specific metrics that Plaintiff would have to meet to avoid the termination of his employment. As with the other actions taken against Plaintiff, this act was based on Plaintiff's race, sex, and/or national origin and discriminated against him on these bases.

51.     These performance criteria were not applied to or required of any other Admissions Counselor in Plaintiff's department, all of whom were Caucasian.

52.     Plaintiff, however, met and even exceeded the metrics.

53.     As a result, Plaintiff precluded Ms. Sella from being able to use a claim of poor performance as a pretext for the termination of Plaintiff's employment.

54.     On March 15, 2016, Mr. Chip Paucek, CEO of 2U, created an Anti-Discrimination Steering Committee.  Company employees were notified that they could apply to become members of the Steering Committee.

55.     The formation of this Anti-Discrimination Steering Committee was a pretext designed to create an image that Defendant was addressing the issues of discrimination that Plaintiff had been leveling at the Company.

56.     Because of the unlawful discrimination that he had been experiencing at 2U, Plaintiff was keenly interested in participating in any ostensible undertaking to address discrimination at 2U, and to assure that these issues were being addressed.

57.     Plaintiff sent an email to Director Lacey French, informing her of Plaintiff's interest in applying to become a member of the Anti-Discrimination Steering Committee.

58.     Ms. French told Plaintiff not to apply.

59.     On April 20, 2016, Plaintiff was terminated from his position without any specific reason given.

## COUNT I
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RACE DISCRIMINATION

60.     Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

61.     Plaintiff's race is African American, a group protected under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*

62.     As such, Plaintiff is a member of a group which is commonly perceived as physiognomically distinct.

63.     At all relevant times, Plaintiff was qualified for the positions he held during his employment with Defendant.

64.     Defendant discriminated against Plaintiff because of his race.

65.     Defendant did not promote Plaintiff because of his race and promoted less experienced co-workers who were not of his race.

66.     Defendant terminated Plaintiff from his position because of his race.

67.     Defendant subjected Plaintiff to different terms, conditions and privileges of employment because of his race in violation of Title VII of the Civil Rights Act of 1964, as amended.

68.     By the above-described acts, Defendant discriminated against Plaintiff because of his race by tolerating and failing to take affirmative action to correct these unlawful employment practices, by discriminating against him with respect to the terms, conditions and privileges of

his employment because of his race and through the denial of employment rights, benefits, promotions and achievements.

69.     Defendants acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Plaintiff.

70.     As a result of Defendants' discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, both in the past and in the future, as well as emotional pain, mental anguish, physical suffering, inconvenience, and loss of enjoyment of life.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## SEX DISCRIMINATION

71.     Each and every allegation contained in the foregoing paragraphs 1-59 is realleged as if fully rewritten herein.

72.     Plaintiff's gender is male, a protected group under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*

73.     As such, Plaintiff is a member of a group which is distinct and protected.

74.     At all relevant times, Plaintiff was qualified for the positions he held during his employment with Defendant.

75.     Defendant discriminated against Plaintiff because of his sex.

76.     Defendant did not promote Plaintiff because of his sex and promoted others who were not his sex.

77.     Defendant terminated Plaintiff from his position because of his sex.

78.     Defendant subjected Plaintiff to different terms, conditions and privileges of employment because of his sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*

79.     By the above-described acts, Defendant discriminated against Plaintiff because of his sex by tolerating and failing to take affirmative action to correct these unlawful employment practices, by discriminating against his with respect to the terms, conditions and privileges of his employment because of his sex, and through the denial of employment rights, benefits, promotions and achievements.

80.     Defendants acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Plaintiff.

81.     As a result of Defendants' discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, both in the past and in the future, as well as emotional pain, mental anguish, physical suffering, inconvenience, loss of enjoyment of life.

**COUNT III**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**NATIONAL ORIGIN DISCRIMINATION**

82.     Each and every allegation contained in the foregoing paragraphs 1-59 is realleged as if fully rewritten herein.

83.     Plaintiff's national origin is Liberian, a group protected under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*

84.     As such, Plaintiff is a member of a groups which are, and are commonly perceived as being, ethnically and physiognomically distinct.

85.     At all relevant times, Plaintiff was qualified for the positions he held during his employment with Defendant.

86.     Defendant discriminated against Plaintiff because of his national origin.

87.     Defendant did not promote Plaintiff because of his national origin and promoted others who were not of his national origin.

88.     Defendant terminated Plaintiff from his position because of his national origin.

89.     Defendant subjected Plaintiff to different terms, conditions and privileges of employment because of his national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*

90.     By the above-described acts, Defendant discriminated against Plaintiff because of his national origin by tolerating and failing to take affirmative action to correct these unlawful employment practices, by discriminating against his with respect to the terms, conditions and privileges of his employment because of his national origin, and through the denial of employment rights, benefits, promotions and achievements.

91.     Defendants acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Plaintiff.

92.     As a result of Defendants' discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, both in the past and in the future, as well as emotional pain, mental anguish, physical suffering, inconvenience, loss of enjoyment of life.

## COUNT IV
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## RETALIATION

93.     Each and every allegation contained in the foregoing paragraphs 1-59 is realleged as if fully rewritten herein.

94.     After Plaintiff complained about discrimination, Defendants engaged in activities in retaliation for Plaintiff's complaints, as outlined above, in violation of Title VII.

95.     After Plaintiff complained about unfair and unlawful treatment to his supervisors, Defendant engaged in activities of retaliation, including a final warning, probation, a three-week period to achieve specific requirements to retain position and termination.

96.     As a result of Defendants' retaliatory actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, physical suffering, inconvenience, loss of enjoyment of life in the past, and in the probability will continue to suffer in the future.

## PRAYER FOR RELIEF

97.     Plaintiff demands that judgment on the forgoing claims be entered in his favor against Defendant, and prays for the following relief from Defendant:

a.      A money judgment for actual damages for the period of time provided by law, including appropriate back-pay and reimbursement for any lost benefits;

b.      Reinstatement or front-pay in lieu of reinstatement;

c.      A money judgment for compensatory damages and punitive damages as allowed by law;

d.      Attorneys' fees;

e.      Pre-judgment and post-judgment interest as allowed by law;

f.      Costs of court and costs of prosecuting Plaintiff's claim, including expert witness fees; and

g.      Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,


_____/s/_____
Bruce M. Luchansky (Bar No. 08439)
**LUCHANSKY MILLMAN**
606 Bosley Avenue, Suite 3B
Towson, Maryland 21204
Telephone: (410) 522-1020
Facsimile: (410) 522-1021
Email: lucky@luchanskylaw.com
*Attorney for Plaintiff, Nyuma Johnson*

## **REQUEST FOR JURY TRIAL**

Plaintiff demands a jury on all issues triable to a jury.

Respectfully submitted,


_____ /s/ _____
Bruce M. Luchansky (Bar No. 08439)